# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SHIRLEY MACK, :

                Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant. :

Case No. 3:08-cv-470

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict

(now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged

2

in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on February 20, 2001, alleging disability from March 24, 2000, due to spinal and neck surgery, pain in shoulders and neck, depression, and anxiety. See Tr. 124-26; 141. Plaintiff's application was denied initially and on reconsideration. See Tr. 94-104. A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 43-93), who determined that Plaintiff was not disabled. (Tr. 21-38). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Padilla's decision became the Commissioner's final decision.

Plaintiff filed an action in this Court seeking judicial review of the Commissioner's decision. *Mack v. Commissioner of Social Security*, No. 3:05-cv-063 (filed February 14, 2005). Subsequently, the Court remanded the matter to the Commissioner for further administrative proceedings. *Id.* at Doc. 11, 14, 15; *see also,* Tr. 434-62. On remand, the Appeals Council vacated

3

Judge Padilla's decision and remanded the matter to him for further proceedings consistent with the Court's Remand Order. (Tr. 463). During this period of time, specifically on April 28, 2006, Plaintiff filed another application for SSD, which was associated with her prior application. (Tr. 412, 479-80). Pursuant to the Appeals Council's order, Judge Padilla held a hearing, (Tr. 644-76), and subsequently found that Plaintiff is not disabled. (Tr. 412-27). The Appeals Council denied Plaintiff's request for review, (Tr. 397-99), and Judge Padilla's decision became the Commissioner's final decision. This action followed.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe residuals of cervical spine surgeries, chronic pain disorder, and an affective disorder with features of depression and anxiety, but that she does not have an impairment or combination of impairments that meets or equals the Listings. Tr. 416, ¶ 3, Tr. 419, ¶ 4. Judge Padilla found further that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 419, ¶ 5). Judge Padilla then used sections 202.14 and 202.06 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and found that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 426, ¶ 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 427, ¶ 11).

The record indicates that Plaintiff underwent a two-level anterior cervical fusion on June 29, 1993. (Tr. 173-84). In addition, on May 24, 2000, Plaintiff underwent an anterior cervical decompression and arthrodesis with instrumentation at C4-5. (Tr. 203-05).

Plaintiff treated with pain specialist Dr. Gupta from February, 2001, to April, 2006. (Tr. 186-87, 211-34, 341-70, 520-73). Dr. Gupta's records reveal Plaintiff's treatment included pain

4

medications, physical therapy, trigger point injections, epidural injections, facet joint injections, and radio-frequency oblation and that Plaintiff reported no sustained relief from pain. *Id.*

The record contains treatment notes from family practice physician Dr. Chung dated April, 1999, through August, 2006. (Tr. 235-42; 269-71; 303-17, 578-630). Those notes reveal that Dr. Chung provided referrals to specialists and monitored Plaintiff's psychiatric medications. *Id.* In April 2001, Dr. Chung reported that Plaintiff's areas of pain were the back of her neck, headaches, and left shoulder. *Id.* Dr. Chung also reported that Plaintiff was able to sit, stand, walk and bend "ok", but that her abilities to lift, carry, and handle objects were limited due to neck pain. *Id.* On May 2, 2002, Dr. Chung reported that Plaintiff was able to lift ten pounds occasionally and five pounds frequently. *Id.* Dr. Chung opined that Plaintiff's abilities to stand and walk were not affected, but that her ability to sit was limited to one to two hours due to neck pain. *Id.* Dr. Chung noted that his opinion was based on "moderate neck pain". *Id.*

Consulting neuropsychologist, Dr. Flexman, reported on August 21, 2001, that Plaintiff had a high school education and was an L.P.N., that she worked as needed at Heartland of Eaton, that her mood was depressed, and that she felt overwhelmed and was quite indecisive. (Tr. 272-74). Dr. Flexman also reported that Plaintiff's posture was relaxed, her facial expressions were anxious and sad, her general body movements were fidgety, and her speech was appropriate. *Id.* Dr. Flexman noted that Plaintiff's affect was intense with lability present, she was anxious, depressed, and overwhelmed, testing revealed that she was functioning within the average range of intelligence, she had some difficulties with concentration and divided attention, she was experiencing a major depression, and that she was in need of counseling to help her deal with her current pain as well as with other family problems and difficulties. *Id.*

Plaintiff received mental health treatment from a counselor in Dr. Flexman's office beginning in July, 2001. (Tr. 300-30; 336). The counselor identified Plaintiff's diagnosis as major depression, recurrent. *Id.* Plaintiff saw the counselor on several occasions until about February, 2002. *Id.*

Dr. Flexman and Plaintiff's counselor reported on August 27, 2002, that at the beginning of treatment and throughout, Plaintiff had been severely depressed, anxious, and overwhelmed, continued to report major fatigue which caused more depressed feelings, that she could not complete even simple tasks, and that she had been able to work at times, but that it was getting more and more difficult because her pain was getting worse and unbearable. (Tr. 336-40). Those mental health care providers also reported that the severity of Plaintiff's depression and anxiety with fatigue and difficulty tolerating her chronic pain level would greatly limit her ability to function in a normal capacity in a work setting, that she was unable to sustain adequate attention and concentration to perform even simple tasks, that she was unable to follow one or two-step instructions, and that she was unable to withstand the normal stresses and pressures in a job setting. *Id.* Dr. Flexman and Plaintiff's counselor identified Plaintiff's diagnoses as major depressive disorder, recurrent, and anxiety disorder not otherwise specified, noted that they had not seen Plaintiff since February, 2002, and opined that Plaintiff had fair to poor abilities to make occupational adjustments, good to poor abilities to make performance adjustments, and fair to poor abilities to make personal/social adjustments. *Id.* The record reveals Plaintiff received mental health treatment from another counselor in Dr. Flexman's office from March 10, 2003, to November 14, 2003. (Tr. 631-32).

On July 31, 2002, Plaintiff began receiving treatment from psychiatrist Dr. Birdi. (Tr.

383-84). Initially, Dr. Birdi noted that Plaintiff was alert but easily distracted, her attention and concentration span were impaired, her mood was sad, anxious, and tearful, and that her affect was full in range, intense in amplitude and appropriate to her mood. *Id.* Dr. Birdi identified Plaintiff's diagnosis as major depression and he assigned her a GAF of 50. *Id.* Plaintiff continued to treat with Dr. Birdi through at least April, 2004, and over time, Dr. Birdi documented that Plaintiff's clinical symptoms improved in that Plaintiff was alert, oriented, had normal speech, normal psychomotor activities, normal thought process, normal memory, and that her judgment was intact. (Tr. 375-82, 393-96; 507-14).

Examining psychologist Dr. Martin noted on August 20, 2002, that Plaintiff reported she was forgetful, complained of headaches and chronic pain, and that she reported problems with her family. (Tr. 319-35). Dr. Martin also noted that Plaintiff reported that she was disabled because she could not work full time, that she could work for awhile and then when the pain got bad, she could not get her work done. *Id.* Dr. Martin reported that Plaintiff displayed pain behaviors and took pain pills during the assessment, her affective responses were depressed, she was cooperative, her mood was considered to be severely depressed with apathy and irritability, she was able to present her thoughts in a rational and linear manner without loose associations to tangential topics, and that she was oriented. *Id.* Dr. Martin also reported that test results indicated the presence of severe depression. *Id.* Dr. Martin identified Plaintiff's diagnoses as major depressive disorder, recurrent and severe without psychotic features, pain disorder associated with psychological factors and general medical condition, and psychological factors affecting physical condition. *Id.* Dr. Martin assigned Plaintiff a GAF of 50 and opined that Plaintiff's abilities to relate to co-workers and supervisors and to withstand the stress of normal work were moderately to severely limited and

that her ability to maintain attention and concentration was moderately limited, but that she did not have any limitation in her ability to understand, remember, and follow simple instructions. *Id.*

On January 10, 2003, Dr. Birdi reported that Plaintiff was able to perform most work-related mental activities. (Tr. 371-74).

Examining psychologist Dr. Payne reported on January 27, 2003, that Plaintiff worked occasionally in a nursing home, that her facial expressions revealed sadness and tears, that she was quietly cooperative, her motivation was average, and that her speech was normal although her stream of thought appeared to be somewhat disjointed and her thought associations were occasionally tangential, and that she described herself as depressed. (Tr. 385-92). Dr. Payne also reported that Plaintiff was apathetic and dysphoric in demeanor, appeared to be fidgety and restless, had no thought disorder, did not appear to be excessively worried about any physical problems, and that her consciousness was occasionally distracted. *Id.* Dr. Payne noted that Plaintiff was oriented and that her overall judgment capabilities were adequate. *Id.* Dr. Payne identified Plaintiff's diagnosis as major depression, recurrent, and he assigned her a GAF of 47. *Id.* Dr. Payne opined that Plaintiff's ability to relate to others was markedly impaired, she was able to understand and follow through with moderately complex tasks-related instructions, she should be able to cope with written instructions, her concentration and attention required for normal employment were markedly impaired, and that she was markedly impaired in her ability to withstand the stress and pressure of day-to-day work activity. *Id.*

An MRI of Plaintiff's cervical spine performed in August, 2004, revealed residuals of prior surgeries, reversal of the cervical lordosis, and degenerative changes at several levels, but that "due to susceptibility artifact, this study is somewhat limited." (Tr. 568-69). That MRI also

revealed mild central canal narrowing at C3-4 and foramen narrowing at several levels. *Id.* An MRI of Plaintiff's thoracic spine also performed in August, 2004, revealed mild degenerative changes. (Tr. 570-71).

Examining psychiatrist Dr. Bienenfeld reported on March 23, 2006, that Plaintiff worked as a licensed practical nurse at a nursing home for two days every other weekend, that she saw psychotherapists off and on between 2001 and 2003, saw a psychiatrist in 2002, and 2003, that medications were of some help but provided incomplete relief from her depression and anxiety, that she had not had formal mental health treatment since 2004, and that was currently taking antidepressant and antianxiety medication prescribed by her primary care physician. (Tr. 515-19). Dr. Bienenfeld also reported that Plaintiff was alert and cooperative, sat through the extended examination with a mild degree of physical restlessness, her mood was anxious and depressed, and she was tearful throughout most of the interview. *Id.* Dr. Bienenfeld noted that Plaintiff's thought processes were unremarkable, her concentration was moderately impaired, and that test results indicated the presence of severe depression and moderately severe anxiety. *Id.* Dr. Bienenfeld identified Plaintiff's diagnoses as major depression, recurrent and severe without psychosis, generalized anxiety disorder, and pain disorder, and he assigned her a GAF of 50. *Id.* Dr. Bienenfeld opined that Plaintiff's depression and anxiety severely impaired her ability to withstand the stresses and pressures of ordinary work activity, her sensitivity to criticism was overwhelming, her poor concentration inhibited her ability to work properly, she was easily fatigued, and that by Plaintiff's report, she has been disabled since at least 2003. *Id.*

Dr. Chung reported on August 18, 2006, that Plaintiff was alert, oriented, a bit depressed, had limited ranges of motion especially both side motions and extension of her neck,

9

some tenderness of both trapezius muscles, and weak hand grips. (Tr. 574-75). Dr. Chung also reported that Plaintiff's diagnoses were back surgeries twice, cervical radiculitis, depression, GERD, chronic headache, chronic neck pain, and arm pain and weakness due to cervical spine surgery. *Id.* Dr. Chung opined that due to her chronic neck pain from two previous cervical fusion surgeries, some complications from the surgery, and her complaints of chronic pain in the back of her head, arm weakness, and grip weakness, Plaintiff could not work full time as a nurse or even part time as a nurse. *Id.* On August 30, 2006, Dr. Chung reported that Plaintiff was able to lift up to fifteen pounds occasionally and ten pounds frequently, stand/walk for two hours in an eight-hour day and for forty-five minutes without interruption, sit for four hours in an eight-hour day and for one hour without interruption, that she was not able to perform either light or sedentary work, and that she would be absent more than three times a month due to her impairments. (Tr. 639-43).

At the administrative hearing, a medical adviser (MA) testified that Plaintiff's depression had been described as a reactive depression, that it was a reaction to chronic pain and serious lifestyle problems involving her family, and that Plaintiff's depression did not appear to be at a debilitating level since she was able to work full-time despite some of the stressors in her life. *Id.* (Tr. 75-85). The MA also testified that her review of the medical records revealed that depression had not been Plaintiff's predominant complaint but that her physical pain is her predominant complaint. *Id.* The MA opined that based on Plaintiff's ability to continue working, Plaintiff did not have any limitations in social functioning or the ability to perform a rather complex job. *Id.* The MA also opined that Plaintiff's problems with memory or concentration were mild, that her memory and concentration difficulties could be due to her medications, and that if Plaintiff were experiencing a significant amount of emotional distress, her concentration limitations would be in the moderate

10

range. *Id.* The MA opined further that Plaintiff's depression did not meet the Listings. (Tr. 77).

Plaintiff alleges in her Statement of Errors that the Commissioner erred in evaluating treating and medical source opinions and by failing to properly evaluate her allegations of disabling pain. (Doc. 9). Plaintiff also alleges that the Commissioner failed to consider the combined impact of Plaintiff's mental and physical impairments.

It is, of course, the Commissioner's function to weigh the evidence. *Young v. Secretary of Health and Human Services,* 787 F.2d 1064 (6th Cir.), *cert. denied,* 479 U.S. 990 (1986). Social Security matters not uncommonly involve the situation of conflicting medical evidence and the trier of fact has the duty to resolve that conflict. *Cf., Richardson v. Perales,* 402 U.S. at 399; *see also, Mullins v. Secretary of Health and Human Services,* 836 F.2d 980 (6th Cir. 1987).

Contrary to Plaintiff's argument, Judge Padilla considered evidence other than the MA's opinion in determining that Plaintiff is not disabled. (Tr. 420-25) Judge Padilla noted that Dr. Birdi was Plaintiff's treating psychiatrist, but that Plaintiff had seen him on only four occasions during the period September, 2003, to April, 2004, and that those visits were primarily related to monitoring Plaintiff's medication. *Id.* That indeed is an accurate summary of Plaintiff's treating relationship with Dr. Birdi during that period of time. *See, e.g.,* Tr. 507-14. Furthermore, a review of Dr. Birdi's notes reveals that Plaintiff displayed few objective clinical findings. For example, Dr. Birdi usually found that Plaintiff was alert, oriented, had normal speech, normal psychomotor activities, normal thought process, normal memory, and that her judgment was intact. *See, e.g.,* Tr. 375-82; 393-96; 507-14. Indeed, Dr. Birdi noted that, at worst, Plaintiff was easily distracted and that her mood was sad and anxious. *Id.* Further, Dr. Birdi opined in January, 2003, that Plaintiff was capable of performing most work-related mental activities.

In addition to finding that Dr. Birdi's opinion generally supported his conclusion that Plaintiff is not disabled, Judge Padilla also considered Plaintiff's ability to continue to work "close to substantial gainful activity almost the entire time since [her] alleged onset date." (Tr. 422). In doing so, Judge Padilla noted that Plaintiff's work as a licensed practical nurse was physically and mentally demanding, of a stressful nature due to the high level of responsibility, and that she has been with the same employer for over sixteen years indicating that she was "apparently very good" at what she does. *Id.*

Judge Padilla also considered Plaintiff's other activities including caring for her father including doing his shopping and paying his bills, caring for her husband after he had heart surgery, occasionally cooking and washing dishes, doing laundry, gardening, and remodeling a house in preparation for selling it. *See, e.g.,* 520-73. Moreover, Plaintiff testified at the hearing that she was not being treated by a mental health care provider. Further, although Plaintiff testified that she engages in very limited activities, the record indicates that she is more active than she alleges. For example, Plaintiff missed an appointment with Dr. Gupta in May, 2005, "due to a busy schedule" and she cancelled other appointments because she had to work late, due to obligations with remodeling her home, because "something came up, and because she had to go out of town to care for her father. (Tr. 528, 534, 535, 538, 543). In addition, Plaintiff reported that she "had to be more physically demanding at work", and that she had been more active. (Tr. 520, 528).

Additionally, Judge Padilla considered, and rejected Dr. Bienefeld's opinion on the basis that it was based primarily on Plaintiff's subjective complaints. Indeed, Dr. Bienefeld reported that his clinical examination of Plaintiff revealed that she was alert and cooperative, that her mood was, at worst, anxious and depressed, and her thought processes were unremarkable. (Tr. 515-19).

Additionally, Dr. Bienefeld opined that Plaintiff's sensitivity to criticism was overwhelming and her poor concentration inhibited her ability to work, yet, as noted above, Plaintiff continues to work as a nurse on a part-time basis.

Finally, the Court notes that the reviewing mental health experts' opinions support Judge Padilla's finding that Plaintiff is not disabled by her alleged mental impairment. *See, e.g.,* Tr. 243-60.

Under these facts, the Commissioner did not err in his weighing of the evidence and did not, contrary to Plaintiff's contention, rely solely on the MA's testimony and opinion in determining that Plaintiff is not disabled.

Plaintiff argues next that the Commissioner erred by failing to properly evaluate her complaints of disabling pain. In doing so, Plaintiff alleges that the Commissioner failed to properly follow the Court's remand order.

In the Report and Recommendations which recommended that this matter be remanded for further administrative proceedings and which the Court adopted, the Court determined that the Commissioner failed to properly evaluate Plaintiff's complaints of pain. The Court specifically noted that Plaintiff's daily activities were not inconsistent with the five to ten pound lifting restriction to which Dr. Chung limited Plaintiff. (Tr. 443-61). In addition, the Court found that the Commissioner failed to cite to the objective medical evidence of record in assessing Plaintiff's complaints of pain. *Id.*

As noted above, on August 30, 2006, treating physician Dr. Chung opined that Plaintiff was able to lift up to fifteen pounds occasionally and ten pounds frequently. On remand, Judge Padilla found that Plaintiff is capable of performing a limited range of light work which is

13

consistent with the lifting restriction which Dr. Chung described. *See,* 20 C.F.R. § 404.1567. Further, in rejecting Plaintiff's allegations of disabling pain, Judge Padilla noted that a February, 2003, EMG revealed no evidence of a cervical radiculopathy, plexopathy, or other neuropathy. (Tr 420). Additionally, Judge Padilla noted that while an August, 2004, MRI of Plaintiff's cervical spine showed some degenerative changes, the spinal cord was unremarkable. *Id.* This Court concludes that the Commissioner addressed the issues raised in the remand order.

Plaintiff's next argument is that the Commissioner failed to consider her impairments in combination.

The Act requires the Commissioner to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988) (citation omitted). A disability may result from multiple impairments, no one of which alone would constitute a full disability. *Loy v. Secretary of Health and Human Services,* 901 F.2d 1306 (6th Cir. 1990). An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a "combination of impairments" in finding that the plaintiff does not meet the Listings. *Id.* (citation omitted).

A review of Judge Padilla's decision shows that he consistently referred to Plaintiff's impairments in the plural. *See, e.g.,* Tr. 416, 418, 419. In addition, Judge Padilla specifically referred to Plaintiff's impairments in combination in determining that she does not meet or equal the Listings. (Tr. 419, ¶ 4). Under these facts, the Commissioner did not err by failing to consider Plaintiff's impairments in combination.

14

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 30, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).